UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WASHINGTON ENVIRONMENTAL COUNCIL,

    Plaintiff,

v.

MOUNT BAKER-SNOQUALMIE NATIONAL FOREST; UNITED STATES FOREST SERVICE,

    Defendants.

CASE NO. C06-1249-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt. Nos. 39, 40.) Having considered Defendants' motion and attached declarations, memoranda, and exhibits, Plaintiff's Response (Dkt. No. 49), and Defendants' Reply (Dkt. No. 55), and having concluded that oral argument is unnecessary, the Court hereby finds and rules as follows.

**I.  BACKGROUND**

Plaintiff claims that Defendants are in violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, for discharging pollutants into navigable waters of the United States from seven point sources associated with abandoned mine facilities at the Monte Cristo Mining Area ("MCMA") in Washington's Mt. Baker-Snoqualamie National Forest. (*See* Compl. ¶ 1 (Dkt. No. 1 at 1).) These seven point sources, located approximately 60 miles east of Everett, Washington,

ORDER - 1

include: Justice mine and waste dump; Mystery adit 3 and waste dump; Pride of the Woods adit; New Discovery adit 2; Pride of the Mountains adit 1; Sidney waste dump; and the Monte Cristo Concentrator/Ore Collector. (*See* Compl. ¶ 8 (Dkt. No. 1 at 4).) Defendants did not own or operate the abandoned mines in question (*see* Mot. 1 (Dkt. No. 40 at 8)), but Plaintiff argues that Defendants are liable under the CWA for the illegal discharges as the current owners and operators. (*See* Compl. ¶ 1 (Dkt. No. 1 at 2).)

The parties filed cross-motions for summary judgment. Plaintiff argued that it was entitled to judgment as a matter of law because Defendants had "discharged" pollutants in violation of the CWA. (*See* Pl.'s Mot. 10 (Dkt. No. 42 at 11).) Defendants originally disputed the fact that there was a "discharge" under the CWA. (*See* Defs.' Resp. to Pl.'s Mot. 2 (Dkt. No. 48 at 6).) However, upon further study "as part of its continuing [Comprehensive Environmental Response, Compensation, and Liability Act] ("CERCLA") response actions at the MCMA," the Forest Service found "seepage and flow [from the MCMA that] contained concentrations of hazardous substances that exceeded one or more water quality criteria." (Defs.' Supplemental Resp. to Pl.'s Mot. 2 (Dkt. No. 61 at 3).) Thus, Defendants now concede to the discharges and "no longer argue[] that there is a genuine issue of fact as to whether the elements of a CWA violation are met at one or more features of the MCMA." (*Id.*)

However, Defendants argue they are nonetheless entitled to summary judgment because the Court lacks subject matter jurisdiction to hear the case. (Mot. 1 (Dkt. No. 40 at 8).) Section 113(h) of CERCLA strips federal courts of jurisdiction to "review any challenges to removal or remedial action selected under section [104 of CERCLA]." 42 U.S.C. § 9613(h). Defendants argue that the Forest Service has already selected CERCLA removal actions at the MCMA, that this lawsuit "challenges" the selected actions, and that the Court therefore lacks jurisdiction to hear the case.

ORDER - 2

Defendants brought a similar motion before this Court in 2006. (Mot. for J. on the Pleadings (Dkt. No. 11).) The Court denied that motion without prejudice, finding that although the Forest Service was conducting site inspections of several MCMA sites to determine "'whether a CERCLA response action [was] needed'" (*see* Order 4 (Dkt. No. 19)) (*quoting* Lentz Decl. ¶ 6 (Dkt. No. 10 at 3)), "as of the filing of this motion, Defendants had not, however, committed to a particular response action." (*Id.*) In addition, this Court noted that "the record does not show that even preliminary evaluations have been conducted for Justice Mine." (*Id.*) In denying Defendants' motion for judgment on the pleadings, the Court explained "that it may be necessary to revisit the question of its subject-matter jurisdiction should Defendants become able to make a proper showing of the progress and scope of the CERCLA removal activities." (*Id.*)

There have been several changes since the Court last heard this issue. First, the Forest Service is presently treating the seven abandoned mine sites as a single MCMA site "subject to a single coordinated approach under CERCLA." (*See* Lentz Decl. ¶ 12 (Dkt. No. 40-2 at 6).) Second, Defendants contend that "[s]ince this issue was last presented to the Court, the Forest Service has made substantial additional progress on investigation, sampling and analysis at the MCMA. Significantly, the Forest Service has also investigated all seven sites that are the subject of Plaintiff's Complaint." (Mot. 7–8 (Dkt. No. 40 at 14–15).) The Forest Service has (1) completed "Abbreviated Preliminary Assessments" (APAs) for all mines except Justice Mine (*See* Lentz Decl. ¶ 14a (Dkt. No. 40-2 at 7–8)); (2) completed a four-phase Site Inspection ("SI") and issued a Site Inspection Report in December 2007 (*see id.* ¶ 14b); and (3) contracted with consultant Cascade Earth Services (CES) to prepare an "Engineering Evaluation/Cost Analysis" (EE/CA) "to identify and evaluate removal action alternatives" (*id.* ¶ 14d). CES has "prepared a field operations plan [(FOP)] as part of the EE/CA." (*Id.*)

ORDER - 3

Defendants argue that based on the facts that have developed since 2006, Defendants (1) have now "selected" a removal action under section 104 of CERCLA, 42 U.S.C. § 9604, and (2) Plaintiff is "challenging" Defendants' selected removal action, such that Plaintiff's CWA citizens' suit is jurisdictionally barred under section 113(h) of CERCLA, 42 U.S.C. § 9613(h).

**II. DISCUSSION**

Federal courts are courts of limited jurisdiction. Jurisdictional limitations imposed by the Constitution or by Congress "must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Plaintiff bears the burden of demonstrating that this Court has subject matter jurisdiction over its claim. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Section 104 of CERCLA authorizes the President, in response to a release or threatened release of a hazardous substance, to "remove [the substance] or . . . provide for remedial action . . . or take any other response measure consistent with the national contingency plan ["NCP"] . . . to protect the public health or welfare or the environment." 42 U.S.C. § 9604(a)(1). CERCLA responses can be "removal" or "remedial" actions. *See* 42 U.S.C. § 9601(25); *see also* 40 C.F.R. § 300.5. "Removal actions are typically described as time-sensitive responses to public health threats for which the [overseeing agency] is granted considerable leeway in structuring the cleanup." *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1227–28 (9th Cir. 2005). "Remedial actions, on the other hand, are often described as permanent remedies to threats for which an urgent response is not warranted." *Id.* at 1228 (internal footnote omitted).

Section 120 of CERCLA provides specific rules for "remedial actions" taken on "federal facilities." 42 U.S.C. § 9620(d)–(e). The Ninth Circuit has held that section 120 "creates a grant of authority separate from [section] 104." *Fort Ord Toxics Project, Inc. v. Cal. EPA*, 189 F.3d 828,

833–34 (9th Cir. 1999). However, "[t]here is no analogous authority under [section] 120 for the commencement of removal actions. Thus, removal actions [as opposed to remedial actions] on federal property must fall under the general provisions of [section] 104." *Id.* at 834.

The critical CERCLA provision in this case is section 113(h), which states:

> No Federal court shall have jurisdiction under Federal law . . . or under State law . . . to review any challenges to removal or remedial action selected under section [104 of CERCLA].

42 U.S.C. § 9613(h).[1] Section 113(h) provides "a blunt withdrawal of federal jurisdiction," *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1244 (7th Cir. 1991), created to "ensure that there will be no delays associated with a legal challenge of the particular removal or remedial action." H.R. Rep. No. 99-253, pt. 5, at 25–26 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3124, 3148–49. "Without such a provision, responses to releases or threatened releases of hazardous substances could be unduly delayed, thereby exacerbating the threat of damage to human health or the environment." *Id*. Given its broad purpose, section 113(h) applies to "any challenge," whether the challenge is brought under CERCLA or some other statute. *See McClellan Ecological Seepage Situation v. Perry* (*"MESS"*), 47 F.3d 325, 328 (9th Cir. 1995)). However, the text of section 113(h) makes clear that it only precludes challenges to cleanup actions taken pursuant to section 104, not to remedial actions taken under section 120. *Fort Ord*, 189 F.3d at 834.

In light of section 113(h), this Court will be stripped of jurisdiction to hear this case if it "challenges" a removal action that the Forest Service has "selected" pursuant to section 104. *See Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir. 1995). In attempting to demonstrate subject matter jurisdiction, Plaintiff argues that the proposed cleanup is not a removal action under section 104 but rather is a remedial action under section 120. (*See* Resp. 17–21 (Dkt. No. 49).) In

---

[1] The statute lists five exceptions to the jurisdictional bar, none of which is relevant here. 42 U.S.C. § 9613(h).

ORDER - 5

the alternative, Plaintiff claims that Defendants have not "selected" a removal action so as to trigger section 113(h). (*See id.* at 8–12.) Finally, Plaintiff contends that this lawsuit is not a "challenge" to whatever action Defendants have selected. (*Id.*)

A.   **Whether the Cleanup is Pursuant to Section 104 or Section 120 of CERCLA**

Plaintiff argues that the Forest Service's cleanup efforts fall not under section 104 of CERCLA but under section 120, which does not trigger the jurisdictional bar under section 113(h). *See Fort Ord*, 189 F.3d at 834. Plaintiff claims that the cleanup is intended to create a "permanent remedy" and that the Forest Service has "not characterized the MCMA as an immediate threat necessitating immediate action"; therefore, the cleanup allegedly better fits under CERCLA's definition of a "remedial action" as opposed to a "removal action." (Resp. 19–20 (Dkt. No. 49).)

The distinction between "removal" and "remedial" actions may be relevant when the statutory basis for a cleanup is unclear, *see City of Moses Lake v. United States*, 416 F. Supp. 2d 1015, 1021 (E.D. Wash. 2005); however, in this case, the record is abundantly clear that the Forest Service's cleanup actions have been taken pursuant to section 104. First, section 120 applies to federal facilities included on the National Priorities List ("NPL"), 42 U.S.C. § 9420(e), but "[t]he MCMA is not listed on the NPL." (Lentz Decl. ¶ 10 (Dkt. No. 40-2 at 5).) Second, section 104 grants authority to conduct removal and remedial actions to the President, who delegated this authority to the various agency heads in Executive Order 12580. Exec. Order No. 12,580, 3 C.F.R. 193 (1987). In contrast, section 120 grants authority to conduct remedial actions directly to the Administrator of the Environmental Protection Agency ("EPA") and requires EPA participation in assessment, evaluation, and remediation. 42 U.S.C. § 9420(d)(1), (e).  In this case, the EPA is not involved; instead, the Forest Service is acting on its own authority delegated by the President in Executive Order 12580. (Lentz Decl. ¶ 11 (Dkt. No. 40-2 at 5)); *see also Shea Homes Ltd. P'ship*

ORDER - 6

*v. United States*, 397 F. Supp. 2d 1194 (N.D. Cal. 2005) (finding a site cleanup was not pursuant to section 120 because "the site at issue [was] not included on the National Priorities List and the EPA [was] not involved"). Finally, the Forest Service's actions to date are completely consistent with a "removal action" pursuant to section 104. It first conducted "preliminary assessments" of various mines, then performed a comprehensive "site investigation" covering the entire MCMA, and has contracted for an EE/CA. (Lentz Decl. ¶ 14a, b (Dkt. No. 40-2).) These are the exact requirements of a "removal action" as set forth in the relevant regulations. *See* 40 C.F.R. § 300.410, .415. Accordingly, the Court concludes that the Forest Service's cleanup efforts are part of a removal action under section 104, thus making it eligible for the jurisdictional bar under section 113(h).

### B. Whether a Removal Action Has Been "Selected"

The Court next addresses Plaintiff's claim that no action has yet been "selected." Plaintiff argues that the Forest Service has not yet selected any action because it is still in the initial planning phases. Plaintiff contends that "at best, [Defendants'] efforts thus far merely constitute 'a study' of the site." (*See* Resp. 8 (Dkt. No. 49 at 9) (*quoting* Lentz Decl. ¶ 13 (Dkt. No. 40-2 at 7)).) Plaintiff emphasizes that Defendants have not committed to a particular cleanup action, and that they "acknowledge that a 'further response to' the pollutant discharges identified on the MCMA will occur only '*if warranted*.'" (*Id.*) Finally, Plaintiff notes that the EE/CA process is not complete and the Forest Service has not generated an "Action Memorandum." (*See* Resp. 8–9 (Dkt. No. 49 at 9–10) ("It is the latter document that would appear to satisfy the Section 113(h) threshold requirement that a removal action be 'selected,' as that term is commonly used).)

Plaintiff's argument is foreclosed by settled Ninth Circuit precedent. In *Razore v. Tulalip Tribes of Washington*, plaintiffs brought suit brought under the CWA and the Resource,

Conservation, and Recovery Act ("RCRA") challenging the management of a landfill. 66 F.3d at 236. In that case, the EPA had listed the site on the NPL and the responsible parties had signed a remedial investigation/feasibility study ("RI/FS") to "make an informed choice among possible cleanup alternatives." *Id*. The Defendants moved to dismiss for subject matter jurisdiction under section 113(h) of CERCLA, but the plaintiffs argued that the RI/FS was not a selected response action under section 104. *Id.* at 239. Because the RI/FS allowed for a no-action alternative, the plaintiffs argued that it did not constitute a commitment to removal because "there may never be a cleanup." *Id*. The Ninth Circuit disagreed, noting that removal actions under CERCLA are defined to include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." *Id.* (*quoting* 42 U.S.C. § 9601(23)). The Ninth Circuit found that the "RI/FS satisfies this definition." *Id.*[2]

In this case, the MCMA cleanup effort to-date is sufficiently analogous to the RI/FS in *Razore* to also constitute a "removal action" under CERCLA. "The objective of the RI/FS [was] to make an informed choice among possible cleanup alternatives," *id*., just like the EE/CA in this case. (Lentz Decl. ¶ 14e (Dkt. No. 40-2 at 10) ("The purpose of the EE/CA is to identify and evaluate removal action alternatives.").) "The Forest Service is actively engaged in monitoring, assessing, and evaluating the release at [all seven sites under dispute in] MCMA." (Mot. 12 (Dkt. No. 40 at 19) (*citing* Lentz Decl. ¶ 14(e) (Dkt. No. 40-2 at 11)).) It has completed APAs for the entire area, a four-phase SI, and has commenced the EE/CA. (*See* Mot. (Dkt. No. 40).) Although the Forest Service has not selected a specific plan of action, it has clearly taken "actions . . . to

---

[2] Plaintiff challenges this broad reading of CERCLA's "removal" definition, pointing to the Seventh Circuit's opinion in *Frye v. EPA*, 403 F.3d 828 (7th Cir. 2005). (*See* Resp. 11 (Dkt. No. 49 at 12) ("[T]he Seventh Circuit correctly observed that '[a] reading of the full definition, however, indicates that removal is concerned with' . . . specific, and committed, actions, not mere study." (*quoting Frye*, 403 F.3d at 835)).) Whatever the merits of the Seventh Circuit's holding, to the extent that it conflicts with the Ninth Circuit's decision in *Razore*, this Court is compelled to follow Ninth Circuit precedent.

monitor, assess, and evaluate the release or threat of release of hazardous substances," 42 U.S.C. § 9601(23); therefore, under *Razore*, it is already undertaking a removal action.

Moreover, just as in *Razore*, Plaintiff argues that Defendants' CERCLA-related efforts are not removal actions because it is still possible that the Forest Service will *never* select a specific cleanup plan. (Resp. 8 (Dkt. No. 49 at 9); *see also* Lentz Decl. ¶ 9 (Dkt. No. 40-2 at 5) (the "investigation . . . lead[s] to the choice of a clean up strategy, *or the decision to take no action*" (emphasis added)); *id*. ¶ 13 ("a 'further response to' the pollutant discharges . . . will occur only '*if warranted*'" (emphasis added)); *id*. ¶ 14(e) ("the decision about the need, *if any*, for further removal action." (emphasis added))). As described above, the Ninth Circuit rejected this exact argument in *Razore*. 66 F.3d at 239. The Court acknowledged that it was "theoretically possible" that no action would be taken,[3] but held that it could not "ignore the clear mandate of section 113(h)." *Id*. The Court noted that if the agency ultimately "elects not to initiate a cleanup under CERCLA, the plaintiffs can then bring an appropriate citizen suit." *Id*.

In this case, the Court finds that "under the clear mandate of section 113(h)," *id.*, the Forest Service's preliminary actions to clean up the MCMA constitute removal actions under section 104.

**C.    Whether Plaintiff's Suit Is a "Challenge" to the CERCLA Cleanup Action**

Finally, Plaintiff argues that even if Defendants' cleanup efforts at the MCMA site constitute a selected response action, "WEC's complaint is not a 'challenge' to a cleanup plan that would deprive this Court of jurisdiction under CERCLA's Section 113(h)." (*See* Resp. 1 (Dkt. No. 49 at 2).) Plaintiff first argues that applying the jurisdictional bar in this case would be contrary to Congressional intent because "the kind of lawsuit envisioned by Congress to fall under the bar of

---

[3] In this case, Lentz, who manages the Forest Service's cleanup efforts, explained in his declaration that upon commencing the EE/CA process, "[i]n almost all cases, [the] Forest Service determines that further response actions are needed." (Lentz Decl. 10 n.1 (Dkt. No. 40-2).)

ORDER - 9

Section 113(h), [was one] in which a 'potentially responsible party' might seek to delay or avoid a cleanup action by bringing suit to challenge it." (*See* Resp. 17 (Dkt. No. 49 at 18).) However, despite Plaintiff's attempt to narrow its scope, section 113(h) plainly applies to any challenge, whether or not the plaintiff is a "potentially responsible party." *See MESS*, 47 F.3d 325, 329 (9th Cir. 1995); *Clinton Co. Comm'rs v. EPA*, 116 F.3d 1018, 1022 ("[W]e agree with the district court and hold Congress intended to preclude *all* citizens' suits against EPA remedial actions under CERCLA.") (emphasis in original).

Plaintiff next looks to the legislative history of section 113(h) and argues that its purpose was to deter only lawsuits that would *delay* the cleanup of hazardous waste sites. (Resp. 12 (Dkt. No. 49 at 13).) Plaintiff argues that "[t]here would be no delay under WEC's desired resolution of this case." (*Id.*) Instead, it claims to seek only to impose "binding deadlines" on the cleanup. (*Id.* at 13.)

As an initial matter, the Court is not persuaded that this lawsuit could not delay the CERCLA cleanup. Plaintiff seeks "a declaratory judgment that Defendants have violated, and are continuing to violate, the CWA." (Compl. 10 (Dkt. No. 1).) Plaintiff also requests that Defendants be required to "abate the pollution discharges . . . pending Defendants' securing NPDES permits." (*Id.*) The Court cannot say that such injunctive relief would not delay the cleanup, and, in *Razore*, the Ninth Circuit found that similar relief would have resulted in a delay. 66 F.3d at 239–40 (noting that requiring the defendants either "to obtain permits or to stop the pollution discharges" would delay work).

More importantly, when deciding whether a lawsuit constitutes a "challenge" to a cleanup, the Ninth Circuit has framed the test broadly, asking only whether the lawsuit is "related to the goals of the cleanup." *Razore*, 66 F.3d at 239. Even "injunctive relief that 'for all practical

Section 113(h), [was one] in which a 'potentially responsible party' might seek to delay or avoid a cleanup action by bringing suit to challenge it." (*See* Resp. 17 (Dkt. No. 49 at 18).) However, despite Plaintiff's attempt to narrow its scope, section 113(h) plainly applies to any challenge, whether or not the plaintiff is a "potentially responsible party." *See MESS*, 47 F.3d 325, 329 (9th Cir. 1995); *Clinton Co. Comm'rs v. EPA*, 116 F.3d 1018, 1022 ("[W]e agree with the district court and hold Congress intended to preclude *all* citizens' suits against EPA remedial actions under CERCLA.") (emphasis in original).

Plaintiff next looks to the legislative history of section 113(h) and argues that its purpose was to deter only lawsuits that would *delay* the cleanup of hazardous waste sites. (Resp. 12 (Dkt. No. 49 at 13).) Plaintiff argues that "[t]here would be no delay under WEC's desired resolution of this case." (*Id.*) Instead, it claims to seek only to impose "binding deadlines" on the cleanup. (*Id.* at 13.)

As an initial matter, the Court is not persuaded that this lawsuit could not delay the CERCLA cleanup. Plaintiff seeks "a declaratory judgment that Defendants have violated, and are continuing to violate, the CWA." (Compl. 10 (Dkt. No. 1).) Plaintiff also requests that Defendants be required to "abate the pollution discharges . . . pending Defendants' securing NPDES permits." (*Id.*) The Court cannot say that such injunctive relief would not delay the cleanup, and, in *Razore*, the Ninth Circuit found that similar relief would have resulted in a delay. 66 F.3d at 239–40 (noting that requiring the defendants either "to obtain permits or to stop the pollution discharges" would delay work).

More importantly, when deciding whether a lawsuit constitutes a "challenge" to a cleanup, the Ninth Circuit has framed the test broadly, asking only whether the lawsuit is "related to the goals of the cleanup." *Razore*, 66 F.3d at 239. Even "injunctive relief that 'for all practical

purposes, seeks to improve on [a] CERCLA cleanup . . . qualifies as a "challenge" to the cleanup.'" *Hanford Downwinders Coal. v. Dowdle*, 71 F.3d 1469, 1482 (9th Cir. 1995) (*quoting MESS*, 47 F.3d at 330). Although the Ninth Circuit has sometimes noted the potential delay involved that might result from a challenge, *see Razore*, 66 F.3d at 239–40; *MESS*, 47 F.3d at 330, it does not appear to be a critical factor in the analysis, *see Hanford Downwinders Coal.*, 71 F.3d at 1482 (finding, without considering delay, that the requested injunctive relief "while well-intentioned, amounts to an effort to read into CERLCA . . . a duty . . . at plaintiffs' request. As such, it clearly constitutes a challenge under [*MESS*] . . . and thus is subject to § 9613(h)'s jurisdictional proscription.").

In this case, Plaintiff's suit is clearly "related to the goals of the cleanup." *Razore*, 66 F.3d at 239. The goal for the cleanup is to address the harmful release of hazardous substances in the mine adit flows at the MCMA. (*See* Reply 6 (Dkt. No. 55 at 10).) Plaintiff's action seeks injunctive relief requiring Defendants to obtain permits for the pollutants released at these same contamination sources. (*See* Compl. 10 (Dkt. No. 1).) Although well-intentioned, Plaintiff's lawsuit seeks to improve on the cleanup; hence, it must be considered a challenge under CERCLA section 113(h). *Hanford Downwinders Coal.*, 71 F.3d at 1482.

### III. CONCLUSION

For the above reasons, the Court finds that Defendants' cleanup efforts have been selected pursuant to CERCLA section 104, that Plaintiff's lawsuit is a "challenge" to those efforts, and, therefore, that Plaintiff's suit is jurisdictionally barred by Section 113(h). Accordingly,

//

//

//

Defendants' Motion for Summary Judgment (Dkt. Nos. 39, 40) is GRANTED and Plaintiff's Motion for Summary Judgment (Dkt. No. 42) is DENIED as moot.

DATED this 2nd day of June, 2009.

JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

ORDER - 12